UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SOUTHWEST CONCRETE PAVING
COMPANY,

            Plaintiff,

     v.

PENHALL COMPANY,

            Defendant.

No. 2:23-cv-01152-DC-CSK

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

(Doc. Nos. 17, 28, 29)

This matter is before the court on the motion for summary judgment filed by Defendant on June 10, 2024. (Doc. No. 17.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 18.) Because genuine issues of material fact exist that preclude summary judgment, Defendant's motion will be denied.[1]

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is

---

[1] Defendant also concurrently filed a request for judicial notice. (Doc. No. 17-4.) However, because Defendant merely requests the court take judicial notice of the parties' filings on the docket in this case, the court will deny that request as unnecessary.

1

evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255.

The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B). "Where a defendant moves for summary judgment based on an affirmative defense (*i.e.*, an issue on which it bears the burden of proof), the defendant must establish 'all of the essential elements of the . . . defense to warrant judgment in [its] favor.'" *Menzel v. Scholastic, Inc.*, No. 3:17-cv-05499-EMC, 2019 WL 6896145, at *2 (N.D. Cal. 2019) (citation omitted).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish that a genuine issue as to any material facts exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). The nonmoving party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The nonmoving party does not need to establish a material issue of fact conclusively in its favor to establish a factual dispute. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.

Here, Plaintiff Southwest Concrete Paving Company ("SWCP") filed this action asserting breach of contract and breach of warranty claims against Defendant Penhall Company, a subcontractor with whom SWCP had contracted to provide concrete cutting services for a re-paving project at Travis Air Force Base. (Doc. No. 1.) The parties' subcontract agreement provided for Defendant to perform "green cutting," a process of cutting deep-poured concrete during a narrow window of time when the concrete is still "green," to prevent naturally-occurring cracking from ruining the concrete. (*See* Doc. Nos. 17-3 at 140–42; 22-1 at 5–8.) According to Plaintiff, "Defendant missed the green cutting window and failed to begin performing on time because they failed to show up at the jobsite on time," which led to uncontrolled cracks in the concrete that Plaintiff had to remove and replace in full. (Doc. No. 21 at 6.) According to Defendant, Defendant "appeared at the site at the scheduled date and time to perform the cutting work but was denied access to the site for reasons having nothing to do with [Defendant]." (Doc. No. 17-1 at 7.)

In the pending motion, Defendant seeks summary judgment on both of Plaintiff's claims as a matter of law and contends that there are no material facts in dispute. (Doc. No. 17.) However, Defendant's legal arguments are predicated on key facts that Plaintiff disputes (e.g., that Defendant arrived on time, that Plaintiff impeded access to the site, and that Plaintiff did not provide Defendant with an opportunity to cure any alleged defects). Indeed, Plaintiff disputes in whole or in part half of the purportedly undisputed facts stated by Defendant, and Plaintiff states its own additional facts that Defendant indicates are in dispute as well. (*See* Doc. Nos. 22 at 2–6; 23-1 at 6–25.) Moreover, Plaintiff supports its assertion that many of Defendant's stated facts are in dispute by citing to the declarations of David J. Rath (Plaintiff's vice president), Dante Egger (Plaintiff's assistant project manager), Ben McClurg (Plaintiff's project manager), and numerous exhibits of email correspondence between Plaintiff and Defendant that were produced by the parties in discovery. (Doc. Nos. 22-1, 22-2, 22-3.)

For example, some of the material facts that are genuinely disputed are as follows.[2]

---

[2] This list provides some examples; it is not an exhaustive list of the disputed material facts.

- Whether Defendant provided Plaintiff with instructions on how to access Travis Air Force Base. (Doc. No. 22 at ¶ 4.)
- Whether Defendant had any issues accessing Travis Air Force Base on May 6, 2021 when it performed test cuts of the green cutting. (Doc. No. 22 at ¶ 4.)
- Whether, on the morning of May 12, 2021, Defendant followed the entry protocols that Plaintiff detailed in an email dated May 7, 2021, describing the process to be followed by Defendant to gain access to Travis Air Force Base outside of normal hours. (Doc. No. 23-1 at 12, ¶¶ 32, 35.)
- Whether the entry protocols Plaintiff provided were sufficient to ensure Defendant would have unimpeded access to the job site on time. (Doc. No. 23-1 at 15, ¶ 37.)
- Whether Defendant was denied access by security forces at the gate of Travis Air Force Base despite arriving to the gate on time, thereby preventing Defendant from arriving to the job site on time. (Doc. No. 22 at ¶ 4.)
- Whether Defendant arrived to the gate on time to begin work at 3:00 a.m. on the morning of May 12, 2021. (Doc. No. 22 at ¶ 4.)
- Whether, on the morning of May 12, 2021, Defendant called Plaintiff on the telephone to ask for assistance getting through security at the gate prior to 3:00 a.m., or an hour later at 4:00 a.m. (Doc. No. 23-1 at 14, ¶¶ 34, 35.)
- Whether Defendant's crews began green cutting on May 12, 2021 at 4:45 a.m. (Doc. No. 23-1 at 14, ¶ 36.)

In short, while the parties do not dispute that the damage in the form of uncontrolled cracks in the panels of concrete resulted from the late green saw cutting, the parties vehemently dispute whether the green cutting started late due to Defendant's failure to show up on time, or Plaintiff's failure to ensure unimpeded access to the job site at the time required. (Doc. No. 23-1 at 21, ¶ 47.) This factual dispute lies at the heart of Plaintiff's breach of contract and breach of warranty claims.

Notwithstanding these factual disputes, Defendant argues that it is entitled to summary judgment in its favor on Plaintiff's breach of contract claim because the subcontract agreement

4

provided certain "exclusions and conditions," including that "Penhall is not responsible for spalling, unraveling, or cracking of concrete during saw operations or after saw operation." (Doc. No. 17-1 at 21) (quoting Doc. No. 22-1 at 35). Defendant likewise argues that it is entitled to summary judgment on Plaintiff's breach of warranty claim because Plaintiff's "failure to offer [Defendant] an opportunity to cure precludes a claim for breach of warranty." (Doc. No. 17-1 at 22.) Both arguments are flawed, however, as they turn on disputes of material facts as well.

First, as to the exclusion provision, there is a temporal component to that exclusion: ". . . cracking of concrete *during* saw operations or *after* saw operation." (Doc. No. 22-1 at 35) (emphasis added). As Plaintiff emphasizes in its opposition, Plaintiff's claims are predicated on Defendant's failure to begin green cutting the concrete on time, meaning the cracks that green cutting is intended to prevent had already begun forming in the poured concrete well before Defendant started the cutting operations. (Doc. No. 21 at 13–14.) In other words, the cracking of the concrete at issue was not cracking during or after saw operations. Indeed, in its reply, Defendant does not contest the timing of the cracking but rather reiterates its position that it was denied access to the job site despite arriving to the gate on time—a fact that is in dispute as discussed above.

Second, as to the breach of warranty claim, Plaintiff has rebutted Defendant's argument by pointing to several genuine disputes of fact regarding whether Defendant offered Plaintiff an opportunity to cure its deficient work. (Doc. No. 21 at 15–16.) It is undisputed that Plaintiff sent Defendant a letter dated May 14, 2021, stating that it believed a "Termination for Convenience" under Article 9 of the subcontract agreement was in its best interests. (Doc. No. 17-3 at 125.) But before sending that termination letter, on May 13, 2021, Plaintiff sent a letter to Defendant stating:

> It is SWCP's belief that due to Penhall's late arrival to the jobsite the green cutting was not on time and caused significant cracking in 17 20'x18.75'x17" concrete panels. This cracking has resulted in all 17 panels needing to be removed and replaced.
>
> It is also SWCP's belief that Penhall in a partnering effort should share in the compensatory responsibility for the remedial work required. Penhall was hired to preform this scope of work due to their expertise and prior knowledge of working on previous phases of

ramp 400 at Travis Air Force Base. Based on preconstruction meetings and conversations SWCP was led to believe that all pertinent information was provided to Penhall prior to start of work. Based on the cracking of 22 individual panels due to late cutting we feel that Penhall has failed in their responsibility to execute per standards of quality required for military airfield paving.

(Doc. No. 22-1 at 49–50.) Plaintiff contends that through this letter, it provided Defendant with an opportunity to cure the deficient work. (Doc. No. 21 at 15.) In response to that letter, Defendant stated:

Per a telephone conversation initiated by Penhall Company today 13 May 2021, with team members from both [SWCP] and Penhall Company, it is understood that the Project has approx. 22 panels (sizes and locations undetermined at this time) that will require full depth cutting and removal as they are not meeting Technical Specifications due to cracking, spalling or unraveling of said concrete, according to [SWCP].

(Doc. No. 22-1 at 52.) After reiterating the exclusion provisions of the subcontract agreement, Defendant concluded its response by stating:

In the spirit of teamwork and of good faith to the Project, Penhall Company will continue to support the full depth saw cutting only of the insufficient panels, as indicated by [SWCP] and under the continued guidance and complete direction of the [SWCP] team. Penhall will track the quantities of saw cutting on these panels and will be seeking compensation for this work.

(Doc. No. 22-1 at 52.) Moreover, it is undisputed that after receiving the termination letter, Defendant continued to deny all liability but offered to perform the remedial work subject to a 25% discount. (Doc. No. 23-1 at 23, at ¶ 51.) Therefore, Plaintiff has pointed to evidence that would support a finding that Defendant was provided an opportunity to cure but rejected that opportunity and instead required additional payment. Thus, Defendant's contention that it was not provided with an opportunity to cure is subject to a factual dispute.

Lastly, Defendant also argues that even if it was at fault for arriving late to perform the work and even if it was at fault for the cracked concrete, Plaintiff's election to terminate the contract for convenience pursuant to Article 9 precludes Plaintiff from seeking damages. (Doc. No. 17-1 at 13–18.) However, this argument also relies on Defendant's contention that it was not provided an opportunity to cure. (*See id.*) Notably, in its motion, Defendant discusses several

6

cases in which courts found that a party may not terminate a contract for convenience, deny the other party an opportunity to cure, and then sue for damages. (*See* Doc. No. 17-1 at 16 (citing *Shelter Prods., Inc. v. Steelwood Const., Inc.*, 257 Or. App. 382, 402, 307 P.3d 449, 461 (2013) (holding "at least in the absence of an opportunity to correct allegedly defective work, that, where a party has terminated a contract for convenience, that party may not then counterclaim for the cost of curing any alleged default")). Indeed, Defendant concluded this argument by stating the "takeaway" from the cited cases is that: "because [Plaintiff] failed to provide [Defendant] with an opportunity to cure any alleged defects, it is precluded from asserting or recovering damages related to such defects." (Doc. No. 17-1 at 18.)

Given the genuine disputes of material fact that exist in this case, the court will deny Defendants' motion for summary judgment.

Accordingly:

1.    Defendant's request for judicial notice (Doc. No. 17-4) is DENIED;

2.    Defendant's motion for summary judgment (Doc. No. 17) is DENIED;

3.    Defendant's request for a ruling (Doc. No. 28) and the parties' stipulation requesting a status conference (Doc. No. 29) are DENIED as having been rendered moot by this order; and

4.    In light of this order, the court will set a date for a final pretrial conference by separate order.

IT IS SO ORDERED.

Dated:    **March 17, 2026**    _____

Dena Coggins
United States District Judge

7